UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA – SHREVEPORT DIVISION

| | | |
|---|---|---|
| MICHAEL STEVEN KOBER, | * | CIVIL ACTION NO.: 11-CV-00623 |
| | * | |
| VERSUS | * | JUDGE: STAGG |
| | * | |
| AMERICAN UNIVERSITY OF THE | * | MAGISTRATE: HORNSBY |
| CARIBBEAN, N.V., INC. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**AMERICAN UNIVERSITY OF THE CARIBBEAN, N.V.'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant American University of the Caribbean, N.V. ("AUC") respectfully moves pursuant to Rule 12(b)(2), 12(b)(3), 12(b)(6), Federal Rules of Civil Procedure, 28 U.S.C. § 1391 and 28 U.S.C. § 1406(a) for an order dismissing the Complaint of Michael Steven Kober ("Kober"). As demonstrated below, the claims in the Complaint are insufficient as a matter of law and should be dismissed. In the alternative, they should be dismissed for lack of personal jurisdiction and/or venue.

**AUC**

This dispute concerns a claim by a former student against a medical school known as The American University of the Caribbean School of Medicine (the "Medical School"), located on the island of St. Maarten in the Netherlands Antilles.[1] The Medical School has approximately 1000 students enrolled in its medical program at any time and has been operating since 1978. The Medical School's students come from and rotate in almost, if not all, of the fifty states in the United States.

---

[1] On August 3, 2011, DeVry Inc., a global provider of educational services, acquired the business operations and substantially all assets of AUC. See press release attached hereto as Exhibit "A." AUC, therefore, no longer operates or controls the Medical School and cannot provide Kober with the primary relief he is requesting. This will be dealt with on the merits, most likely on summary judgment, if necessary.

1

The Medical School's students receive their basic sciences education on the campus in St. Maarten in their first two years. This is followed by a clinical education component which takes place over the next two years. The clinical education component is received at affiliated hospitals mostly located in the United States, as most of the Medical School's students go on to become U.S. medical doctors.

## Kober

Kober started his medical education at AUC in 2005. While completing his first two years of medical school on the island of St. Maarten, Kober requested and received special testing accommodations in compliance with the Americans with Disabilities Act (the "ADA"), based on information Kober provided AUC regarding his alleged disability. Complaint, p. 7, para. 15.

Kober, however, was unable to begin the second part of his medical education, the clinical rotations, because he did not pass the standardized test required of all international medical students, Step 1 of the United States Medical Licensing Examination ("USMLE Step 1"). Complaint, p. 4, para. 7.

The USMLE Step 1 is offered by the National Board of Medical Examiners (the "NBME"), which is not related to or affiliated with the Medical School. The NBME is a national not-for-profit entity which tests all intending U.S. physicians. It establishes its own testing standards and requirements. Most of Kober's Complaint, however, is dedicated to grievances and alleged ADA violations committed by the NBME and its decisions not to grant Kober special testing accommodations.

Kober's relationship with the NBME began in 2008 when Kober applied for the first time to take the USMLE Step 1 exam with special testing accommodations given his alleged

2

disability.  The NBME responded that Kober had not provided adequate information in order to receive such accommodations.  Complaint, pp. 7-8, paras. 16-17.

Instead of taking the time to submit the requested information, Kober sat for the USMLE Step 1 Exam in July 2008, which he failed.  Despite this failed attempt, Kober still did not submit the requested information but sat for the test again in February 2009.  Again, he failed.  Complaint, p. 8, para. 18.

After these two failures, Kober again requested he be granted special testing accommodations because of his alleged disability.  Again, the NBME responded that he needed to provide it with additional information.  Instead of providing the NBME with this information, he again sat for the test for a third time which resulted in his third failure of the exam.  Complaint, p. 4, para. 7.

Finally, after three failed attempts, in May 2009, Kober sent the NBME additional information, a report from a clinical psychologist.  Complaint, p. 8, para. 19.  The NBME however responded in June 2009 that this information was still incomplete.  Complaint, p. 9, para. 20.

During this time Kober was in limbo since he had completed his first two years of medical school but could not go on to complete the next two without passing the USMLE Step 1.  In such situations, AUC's policy is that students take official leaves of absence in compliance with the Student Handbook.  Student Handbook attached as Exhibit "B."  The Student Handbook states that "students who are absent without an approved Official Leave at any time during a term of enrollment will be considered AWOL and will be automatically withdrawn from the register of enrolled students."  Student Handbook, Section 12.8.  Complaint, p. 11, para. 25.

Generally, only three official leaves of absence are granted, after which the student is dismissed from The Medical School. Student Handbook, Section 15.1. In "extraordinary circumstances" a fourth official leave is sometimes granted. Student Handbook, Section 15.6. Kober, however, applied for and received six official leaves of absence to pursue his efforts to pass the USMLE Step 1.

When it came time, however, for Kober to submit a request for a seventh official leave of absence, he failed to do so. This resulted in Kober's dismissal. Dismissal Letter attached hereto as Exhibit "C."

### Failure to State A Claim Upon Which Relief Can Be Granted

Kober's sole allegation in the Complaint on which his request for injunctive relief rests is that AUC "illegally refused and is illegally refusing to accommodate Kober's learning disability by dismissing Kober from medical school because he has yet to pass the United States Medical Licensing Exam (USMLE) Step 1 Exam" and it has "arbitrarily and in violation of his rights under the ADA dismissed Kober from medical school." The specific provision of the ADA that AUC allegedly violated states "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the . . . accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation." 42 U.S.C. § 12182(a); Complaint, p. 20, para. 48.

AUC, however, by Kober's own account has not violated the ADA, but accommodated his alleged disability while he was actively enrolled in medical school. While enrolled in medical school, Kober applied for and received special testing accommodations from AUC, which included receiving additional time for all testing. In addition, AUC approved all of Kober's six properly applied for official leaves of absence so that he could pursue his efforts to

pass the USMLE Step 1, despite its policy to only grant three, possibly four, in "extraordinary circumstances." AUC, however, could not control or influence the NBME's decisions to not grant Kober's requests for special testing accommodations.

Kober was also only dismissed from AUC once he failed to comply with AUC's official leave policy by not submitting a seventh official leave request for the May 2010 Semester. AUC's official leave policy states "[s]tudents who are absent without an approved Official Leave at any time during a term or enrollment will be considered AWOL, and will be immediately and automatically withdrawn from the register of enrolled students." AUC Official Leave Policies, para. 1.7; AUC Student Handbook, 12.8.

Kober argues in the Complaint however that he did submit a seventh request for official leave. Complaint, p. 11, para. 25. This claim is suspect since Kober does not attach his alleged seventh request to the Complaint and because it is evident that Kober knew from his six previous requests that AUC always expressly confirms its approval of official leaves of absence. Kober, however, states he received no confirmation for this alleged seventh request. Complaint, p. 13, para. 29. In addition, Kober signed and agreed to AUC's Clinical Rotations Assignment Policy which states that a student "**will not extend or delay my test date, after the confirmation is received, without the expressed approval of the MEIO/AUC Office of Clinical Student Affairs**." See executed Policy attached at Exhibit "D."

There was thus nothing arbitrary or discriminatory about Kober's dismissal. Nor did it result from his inability to pass the USMLE Step 1.

Further, when Kober argues that AUC is obligated under the ADA to modify its policies to "grant him a leave of absence pending the resolution of his ADA accommodation request with

5

the NBME," Complaint, p. 20, paras. 48-49, he fails to recognize that by his own account, as stated above, AUC did exactly that.

Kober's dismissal had absolutely nothing to do with his disability and resulted only from his own negligence and failure to follow AUC's rules and procedures.

It is evident from the Complaint that Kober's real issues have nothing to do with AUC as most of the Complaint is dedicated to his grievances against the NBME.  While AUC sympathizes with the predicament Kober has found himself in, it could not control the NBME's decisions nor can it change the fact that Kober failed time and time again to send the NBME the information it requested and took the USMLE Step 1.  Further, AUC is not responsible for Kober's negligence by ignoring AUC's clearly defined rules and procedures.

Kober has not stated a claim upon which relief can be granted and the Complaint should therefore be dismissed.

## Lack of Personal Jurisdiction Over AUC

If the Complaint is not dismissed under Rule 12(b)(6), Federal Rules of Civil Procedure, then the action should be dismissed under 12(b)(2).

It is Kober's burden to properly plead that the Court has personal jurisdiction over AUC. *Kevlin Sevices, Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995) ("[t]he plaintiff bears the burden of establishing the court's personal jurisdiction over the nonresident defendant").  He has not done so.[2]  Kober merely states that "[t]his Court has jurisdiction over AUCSM because AUCSM operates a clinical rotation in Shreveport, Louisiana.  AUCSM also actively markets itself to undergraduate students and recruits undergraduate students in Louisiana."

No basis for jurisdiction under Louisiana's long arm statute is alleged.

---

[2] Should Kober eventually plead personal jurisdiction, AUC respectfully requests the opportunity to more fully brief the issue.

In addition, this conclusory statement does not satisfy Louisiana's long arm statute, La. R.S. Stat 13:3201, nor does it satisfy the due process requirement of minimum contacts. *Orgeron v. Bahama Cruise Line, Inc.*, 1987 WL 15965, *1 (E.D. La. Aug. 20, 1987).

La. R.S. Stat. 13:3201 provides that

[a] court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real right on immovable property in this state.
(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

AUC's conduct does not fall under any provision of the statute above. Currently, AUC has no contacts with Louisiana and historically its contacts with Louisiana were extremely limited and completely unrelated to Kober's claims. *Orgeron v. Bahama Cruise Line, Inc.*, 1987 WL 15965, *2 (E.D. La. Aug. 20, 1987) (court in granting motion to dismiss found that "even if these scant contacts with the forum state constituted 'transacting business' or a 'persistent course of conduct' under sections (1) and (4) of the Long Arm statute, plaintiff has failed to established

the required nexus between the contacts and the injury"); See Declaration of Yife Tien attached hereto as Exhibit "E."

AUC operated an international medical school. Its students came from all around the world. Only a small portion of these students came from Louisiana. Further, AUC never rendered any services to these students in Louisiana. Instead, those students were educated in St. Maarten by AUC. Exhibit "E," p. 2, para. 8.

In addition, in their third and fourth years of medical school, AUC's students underwent clinical training at hospitals primarily in the United States. The vast majority of AUC's students underwent their clinical training at teaching hospitals in the Northeastern region of the United States. Very few rotated in Louisiana. For example, in 2010 of the 1,516 core rotations completed, only 27 were completed in Louisiana. In addition, of the 1,794 elective rotations completed, only 39 took place in Louisiana. Exhibit "E," p. 2, para. 9.

Further, this training was conducted by the physicians and staff at the teaching hospitals and was rendered directly to the students without active participation by AUC. Exhibit "E," p. 2, para. 9.

Mr. Kober never completed any rotations anywhere, let alone Louisiana. Exhibit "E," p. 2, para. 10.

AUC had no other substantive contacts with the state of Louisiana. Exhibit "E," p. 2, para. 11.

Thus, apart from the fact that Mr. Kober is from Louisiana and traveled to St. Maarten for his education, there is nothing between the parties that links this dispute to Louisiana in anyway. Exhibit "E," p. 2, para. 12.

**Improper Venue**

If the Complaint is not dismissed under Rule 12(b)(6) or 12(b)(2), Federal Rules of Civil Procedure, then the action should be dismissed under Rule 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue. It is Kober's burden to show otherwise. *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986) ("When a nonresident defendant timely questions a federal district court's *in personam* jurisdiction over it, the plaintiff asserting jurisdiction has the burden of proving that the court has jurisdiction over the defendant").

The Complaint states that venue is proper under 28 U.S.C. § 1391(c).[3] 28 U.S.C. 1391(c) however simply defines "resides" under the statue. It does not prescribe venue. Venue is therefore not properly pled.

However, even if Kober had properly pled the appropriate venue provision, 28 U.S.C. 1391(b), the Western District of Louisiana would still be inappropriate because he has not pled facts sufficient to support venue. 28 U.S.C. 1391 (b) provides that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

---

[3] 28 U.S.C.A. § 1391 (c) provides that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts."

AUC does not "reside" in the Western District of Louisiana. A substantial part of the events or omissions giving rise to Kober's claim did not take place in the Western District of Louisiana. In fact, as stated above, none of the events or omissions giving rise to Kober's claim took place in the Western District of Louisiana. See Exhibit "E." There is also a judicial district where the action may be brought, the Southern District of Florida, where AUC does reside as it is registered to do business there.[4]

The Complaint should thus be dismissed for lack of venue or transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1406(a) which states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

## Conclusion

The Complaint of Michael Steven Kober against American University of the Caribbean, N.V. should be dismissed under Rule 12(b)(2), 12(b)(3), 12(b)(6), Federal Rules of Civil Procedure, 28 U.S.C. § 1391 and 28 U.S.C. § 1406(a).

Respectfully submitted,

| | |
|---|---|
| /s/ Renee R. Tischler            . | /s/ Edward R. Wicker, Jr. |
| Hendrik G. Milne (admitted *Pro Hac Vice*) | Edward R. Wicker, Jr., 27138, T.A. |
| Renee R. Tischler (admitted *Pro Hac Vice*) | BARRASSO USDIN KUPPERMAN |
| Anna A. Mance (admitted *Pro Hac Vice*) |   FREEMAN & SARVER, L.L.C. |
| ABALLI MILNE KALIL, P.A. | 909 Poydras Street, Suite 2400 |
| 2250 Suntrust International Center | New Orleans, Louisiana 70112 |
| One Southeast Third Avenue, | Telephone: (504) 589-9700 |
| Miami, Florida 33131 | Facsimile: (504) 589-9701 |
| Telephone: (305) 373-6600 | |

*Attorneys for American University of the Caribbean N.V., Inc.*

---

[4] Should Kober eventually plead venue, AUC respectfully requests the opportunity to more fully brief the issue.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum in Support of Motion to Dismiss has been served upon the plaintiff's counsel by electronic mail, court's electronic system, and/or placing same in the United States Mail, postage prepaid and properly addressed this 14th day of September, 2011.

/s/ Edward R. Wicker, Jr.

*667942_1*