UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**CASE NO. 1:12-cv-22276-COOKE/TURNOFF**

MICHAEL STEVEN KOBER,

    Plaintiff,

v.

AMERICAN UNIVERSITY OF THE
CARIBBEAN, N.V., INC.,
DEVRY MEDICAL INTERNATIONAL,
INC., AUC SCHOOL OF MEDICINE
B.V., and NATIONAL BOARD OF
MEDICAL EXAMINERS OF THE
UNITED STATES OF AMERICA

    Defendants.

_____/

**AMERICAN UNIVERSITY OF THE CARIBBEAN, N.V.'S
MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Defendant, American University of the Caribbean, N.V. ("AUC"), respectfully moves pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, "failure to state a claim upon which relief can be granted," for an order dismissing the Third Amended Complaint of Michael Steven Kober ("Kober") [D.E. 73]. For the following reasons, the motion should be granted:

**Factual Background**

**AUC**

This dispute concerns a claim by a former medical student, Kober, against a medical school, known as The American University of the Caribbean School of Medicine (the "Medical School"), located on the island of St. Maarten in the Netherlands Antilles.

Defendant AUC operated the Medical School from February 1999 to August 2011.

The assets of AUC were purchased by AUC School of Medicine, B.V., a St. Maarten company and DeVry Medical International, Inc., a New York corporation in August 2011. Upon information and belief, AUC School of Medicine, B.V. now operates the Medical School. The Third Amended Complaint adds both AUC School of Medicine, B.V. and DeVry Medical International, Inc. to this action.

To the best of the undersigned's knowledge, the Medical School still provides a similar education to its students whereby they receive their basic sciences education on the campus in St. Maarten during their first two years of medical school. This is followed by a clinical education component which takes place over the next two years (dubbed "clinical rotations"). The clinical rotations are received at affiliated hospitals mostly located in the United States, as most of the Medical School's students go on to become U.S. medical doctors.

The relationship between the Medical School and its students is contractual and is, in part, governed by the Student Handbook. *McCawley v. Universidad Carlos Albizu, Inc.,* 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006) ("[u]nder Florida law, a university and its students have a contractual relationship, the terms of which are generally set forth in the university catalogs and manuals. Such a contract comprises matters other than pure academic performance, such as rules of conduct, and students are thus contractually required to conform their conduct to the university's rules").

### **Kober**

Kober began his contractual relationship with AUC seven years ago in 2005 when he started medical school in St. Maarten. While completing his first two years of medical school on the island, Kober requested and received special testing accommodations in compliance with the

2

Americans with Disabilities Act (the "ADA") and Rehabilitation Act, based on information Kober provided AUC regarding his alleged disability. [D.E. 73], p. 3, ¶ 9; p. 3, ¶10.

Kober, however, has been unable to start the second part of his medical education, the clinical rotations, because while enrolled in medical school he did not pass the standardized test required of all international medical students intending to practice in the United States, Step 1 of the United States Medical Licensing Examination ("USMLE Step 1").[1] [D.E. 73], p. 3, ¶ 11.

The USMLE Step 1 is offered by the National Board of Medical Examiners (the "NBME"), which is not related to or affiliated with the Medical School or AUC. The NBME is a national not-for-profit entity which tests all intending U.S. physicians. It establishes its own testing standards and requirements. The NBME is also named as a Defendant in the Third Amended Complaint. Kober's relationship with the NBME began in 2008 when Kober first applied to take the USMLE Step 1 with special testing accommodations. This request, however, was denied and Kober sat for the USMLE Step 1 Exam in July 2008 without special testing accommodations. He failed the exam. He again sat for the exam in February 2009 without special testing accommodations, which he also failed. [D.E. 73], p. 3, ¶ 11.

After his two failed attempts, Kober again applied to the NBME to take the USMLE Step 1 with special testing accommodations. His request was again denied. Kober then sat for the test a third time, in August 2009, without special testing accommodations, which he again failed. [D.E. 73], p. 3, ¶ 11.

During this time, through no fault of AUC, Kober was in limbo since he had completed his first two years of medical school, but could not continue without first passing the USMLE Step 1. Whether or not Kober or any student of the Medical School passes the USMLE Step 1 is

---

[1] Kober has not taken a medical school class since the spring of 2008.

completely unrelated to any decision made by AUC. AUC could not allow Kober to continue his medical education without first passing the exam.

### Kober's Claim Against AUC

When a student needs time to take the USMLE Step 1 outside of a normal semester, AUC's policy is that the student takes an official leave of absence in compliance with the Student Handbook. See the Student Handbook attached at Exhibit "A." The Student Handbook states that "students who are absent without an approved Official Leave at any time during a term of enrollment will be considered AWOL and will be automatically withdrawn from the register of enrolled students." Exhibit "A," Section 12.8.

The Official Leave request is extremely important as close oversight of a student's status is necessary in order for the Medical School to ensure it is in compliance with U.S. Department of Education's requirements so that it can continue participation in the Federal student loan program.

Generally, **only three official leaves of absence are granted** so that students will be afforded three attempts to pass USMLE Step 1. If he or she fails to do so after that time period, the student is subject to dismissal from the Medical School on academic grounds (which is consistent with physician licensure requirements of some States). Exhibit "A," Section 15.1. In **"extraordinary circumstances" a fourth official leave is sometimes granted**. Exhibit "A," Section 15.6. (emphasis added).

Because Kober repeatedly failed the USMLE Step 1, he needed and he actually applied for **six official leaves of absence**. The Medical School granted all six requested leaves of absence. Kober was not dismissed on academic grounds after his third failure of the USMLE

Step 1 in August of 2009.  In sum,  the Medical School granted every request for an Official Leave of Absence from Kober while he remained a student at the institution.

The number of official leaves of absence which may be allowed by the Medical School is not arbitrarily determined.  It is based on compliance with regulations and guidelines established by the U.S. Department of Education as a condition of continued participation in the William D. Ford Federal Direct Loan program.  AUC's policies further reflect the stringent licensure requirements for physician licensure in some States.  In States such as Texas, for instance, an application for physician licensure will not be granted if the applicant has more than three test attempts on USMLE Step 1.  AUC has deliberately established academic criteria for its medical education program so that all of its graduates will meet the licensure requirements of all fifty states.

In May 2010, in line with the Student Handbook, Kober was taken off student enrollment after he failed to submit a request for a seventh Official Leave of Absence.  His contractual relationship with AUC terminated at that time and he was no longer enrolled in the Medical School.

Nonetheless, AUC offered Kober an opportunity to be re-admitted into the Medical School.  Accepting the offer would have put Kober back on student enrollment and would have allowed him another opportunity to apply for and take the USMLE Step 1.  In addition, it would have given him the standing he needed to pursue any claims he might have against the NBME, if it again denied his request for special testing accommodations.  Essentially, he would have received the very relief he is now seeking.[2]

---

[2] Kober is now seeking to be re-admitted into the Medical School "for a period of one year so he can obtain accommodations and take the Step 1 exam." [D.E. 73], p. 12.

Kober, however, refused the offer. He alleges in the Third Amended Complaint that he consciously did so. He claims that this was because "he could not waive his rights to a testing accommodation" and that the Medical School "refused to allow him the ability to pursue his rights to obtain a testing accommodations to continue his studies." [D.E. 73], p. 5, ¶ 21.

This makes no sense. First, by accepting the offer of re-enrollment, Kober waived no right to seek testing accommodation from the NBME. No such waiver would have occurred nor could it. Kober and AUC agree that AUC has no control over whether the NBME will give Kober special testing accommodations. The NBME and the Medical School are not affiliated in any way. Furthermore, as explained above, re-enrollment in medical school would have given Kober standing to not only take the USMLE Step 1 again, but to also ask the NBME for special testing accommodations. If that request were to have been denied by the NBME, Kober would then have had the standing he needed to pursue any right he may have to testing accommodations. He chose, however, not to accept the Medical School's offer of re-admission.

Kober then brought this action. The original complaint [D.E. 1] was filed on April 19, 2011 in the Western District of Louisiana, but was transferred on June 15, 2012 [D.E. 43] to the Southern District of Florida for lack of venue. Kober is now on his fourth version of the complaint and this is AUC's third motion to dismiss.

**Insufficient Pleading and Failure to State a Claim Upon which Relief can be Granted**

    A.    **The Rehabilitation Act**

The Third Amended Complaint alleges one cause of action against AUC: violation of the Rehabilitation Act. A proper Rehabilitation Act claim requires that Kober plead that he: (1) is a handicapped individual under the Act, (2) that he is otherwise qualified for the benefit sought, (3) that he was ***discriminated against solely by reason of his handicap***, and (4) that the program

6

or activity in question receives federal financial assistance. *Schiavo ex rel Schindler v. Schiavo*, 358 F. Supp. 2d 1161, 1165-66 (M.D. Fla. 2005) (emphasis added).

The Third Amended Complaint, however, states no causal connection between Kober's disability and the reason why he was withdrawn from the Medical School. Nor does the Third Amended Complaint state any causal connection between Kober's disability and the fact that he was not re-enrolled in medical school. In addition, based on the facts detailed in the Third Amended Complaint, no such good faith argument could be made.

The Third Amended Complaint should be dismissed as Kober has failed to plead the essential third element of a Rehabilitation Act claim that the conduct complained of occurred solely because of his alleged handicap.

### B.  **Plausibility Standard**

"A district court may dismiss a complaint if the facts as pled do not state a claim for relief that is plausible on its face. Although a complaint need not contain detailed factual allegations, it must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Stringer v. Jackson*, 392 F. App'x 759, 760 (11th Cir. 2010) (internal quotations and citations omitted). In addition, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted); *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007). Further, "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft*, 556 U.S. 662, 129 S. Ct. at 1950 (internal citation omitted).

The Third Amended Complaint states no plausible basis for any argument that AUC is guilty of any wrongdoing.  What is demonstrated is that AUC repeatedly made Kober the accommodations he requested, including the following:

(1) As a student at the Medical School, Kober received special testing accommodations in compliance with the ADA and Rehabilitative Act.  [D.E. 73], p. 3, ¶ 9.

(2) As a student at the Medical School, Kober received **six official leaves of absence** when the Medical School's policy is to only give three, or four in extraordinary circumstances, so that he could pursue his effort to take and pass the USMLE Step 1;

(3) As a student at the Medical School, Kober failed the USMLE Step 1 three times, but was not dismissed from the Medical School on academic grounds which would have been its prerogative pursuant to its policy as stated  in the Student Handbook[3]; and

(4) After being taken off student enrollment, Kober was given an opportunity to be re-enrolled in the Medical School, but he refused.  Had the offer been accepted, Kober would have been able to apply and sit for the USMLE Step 1 and continue with his medical education.  In addition, if Kober felt that any of his rights were being violated by the NBME, he would have had the standing necessary to pursue any potential claim against it.

In addition, throughout the Third Amended Complaint Kober makes numerous obviously misleading or untrue statements in a weak attempt to paint AUC as the "bad guy."  For example, Kober pleads "AUCSM, violated the reasonable accommodation provisions of the ADA by failing to allow modification of the rule limiting to three semesters the period to take the Step 1 exam."  [D.E. 73], p. 7, ¶ 33; p. 11, ¶ 51.  Yet he also pleads that he was out of school attempting

---

[3] Kober failed the USMLE Step 1 for third time in August 2009.  He was withdrawn from the Medical School in May 2010.

to pass the USMLE Step 1 from 2008 to 2010, a total of six semesters.[4] An official leave of absence is only good for one semester. Student Handbook, Section 15. Kober was granted **six official leaves of absence**. Twice as many as the number allowed under the Student Handbook.

Kober also pleads that he was withdrawn from medical school even though AUC "knew, Kober was attempting to sit for the exam but could not do so because his request for accommodations had [not] [sic] been provided." [D.E. 73], p. 5 ¶ 13. This is incorrect. First of all, the Medical School is only aware of the status of its students if they fill out an Official Leave of Absence request, which Kober did not do for the May 2010 semester. More importantly, Kober could always sit for the exam while enrolled in medical school. Solely by his own choosing, Kober did not sit for the exam. Furthermore, Kober may never receive special testing accommodations to take the USMLE Step 1. This is out of the control of AUC and the Medical School.

Further, the Third Amended Complaint states that "[a]t all times material, KOBER was enrolled as a student at AUCSM . . . ." [D.E. 73], p. 11, ¶ 50. This is an untenable conclusion from the balance of what is stated. Kober was not enrolled as a student at the time the offer for re-enrollment was made to him. Nor was he a student of the Medical Student when this lawsuit was brought. AUC ended its contractual relationship with Kober in May 2010. This is extremely significant since Florida courts have held that "[c]ourts are generally reluctant to interfere with or substitute their judgment regarding decisions of academic institutions to award degrees. Such decisions are afforded great deference and are generally not disturbed absent an abuse of discretion." *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1257

---

[4] There are three semesters per school year at the Medical School.

(S.D. Fla. 2006). In sum, the Third Amended Complaint should be dismissed as to AUC as Kober has failed to meet the plausibility standard of *Twombly*.

## Conclusion

The Third Amended Complaint of Michael Steven Kober against American University of the Caribbean, N.V. should be dismissed under Rule 12(b)(6), Federal Rules of Civil Procedure in its entirety.

Respectfully submitted,

ABALLI, MILNE, KALIL, P.A.
2250 SunTrust International Center
One Southeast Third Avenue
Miami, Florida 33131
Telephone: (305) 373-6600
Facsimile: (305) 373-7929

s/ *Renee R. Tischler*
Renee R. Tischler, Esq.
Florida Bar No. 26939
Hendrik G. Milne, Esq.
Florida Bar No. 335886

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served via CM/ECF on all parties authorized to receive service via CM/ECF and via U.S. Mail upon counsel for Plaintiff Michael Steven Kober, Robert R. Bell, at Mullin Hoard & Brown, P.O. Box 31656, Amarillo, TX 79120, this 29th day of October, 2012.

s/ *Renee R. Tischler*